UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Douglas W. Brindley</u>

    v.                                            Case No. 14-cv-548-PB
                                                    Opinion No. 2016 DNH 021

<u>Carolyn W. Colvin,
Acting Commissioner,
U.S. Social Security
Administration</u>

**MEMORANDUM AND ORDER**

Douglas Wayne Brindley is a fifty-three year old man with a history of shoulder issues, polysubstance abuse, depression, and anxiety. Brindley last worked, from 2004 until 2006, as a general laborer. Here, Brindley challenges the Social Security Administration's denial of his claims for disability insurance benefits ("DIB") and supplemental Social Security income ("SSI"). The Social Security Commissioner, in turn, seeks to have the ruling affirmed.

                              **I.    BACKGROUND**

In accordance with Local Rule 9.1, the parties have submitted a joint statement of stipulated facts (Doc. No. 13). <u>See</u> LR 9.1. Because that joint statement is part of the court's record, I need not recount it here. I discuss facts relevant to the disposition of this matter as necessary below.

## II.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), I have the authority to review the pleadings submitted by the parties and the administrative record, and to enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  That review is limited, however, "to determining whether the [Administrative Law Judge] used the proper legal standards and found facts [based] upon the proper quantum of evidence."  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  I defer to the Administrative Law Judge's (ALJ's) findings of fact, so long as those findings are supported by substantial evidence.  Id.  Substantial evidence exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'"  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the substantial evidence standard is met, the ALJ's factual findings are conclusive, even where the record "arguably could support a different conclusion."  Id. at 770.  Findings are not conclusive, however, if the ALJ derived his findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).  The ALJ is responsible for determining

2

issues of credibility and for drawing inferences from evidence in the record. Irlanda Ortiz, 955 F.2d at 769. It is the role of the ALJ, not the court, to resolve conflicts in the evidence. Id.

### III. ANALYSIS

Brindley applied for DIB and SSI in May 2011, alleging disability as of November 2, 2006. Tr. at 147-61. After his claims were initially denied in May 2011, a hearing was held before an ALJ in September 2012. Tr. at 37-66 (hearing transcript). Following that hearing, the ALJ issued a written decision concluding that Brindley was not disabled. Tr. at 24-33 (ALJ's written decision).

In his decision, the ALJ evaluated Brindley's claims under the five-step sequential process described in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The ALJ found at step one that Brindley had not engaged in substantial gainful activity since November 9, 2009, the amended alleged onset date. Tr. at 26. At step two, the ALJ determined that Brindley had severe impairments of status post left rotator cuff repair, right shoulder impingement, polysubstance abuse, and depression with anxiety. Tr. at 26. The ALJ then found at step three that Brindley's impairments did not meet or medically equal any of the listed impairments, specifically considering listings 1.02,

12.04, 12.06, and 12.09.  Tr. at 27-28.  Finally, relying exclusively upon the Medical-Vocational Guidelines (the "Grid"), the ALJ determined at step five that, despite his severe exertional and non-exertional impairments, Brindley had the residual functional capacity to perform work in the national economy.  Tr. at 32.  The ALJ therefore concluded that Brindley was not disabled.  Tr. at 33.

In April 2014, the Appeals Council denied Brindley's request for review.  Tr. at 14-16.  As such, the ALJ's decision constitutes the Commission's final decision, and this matter is now ripe for judicial review.

Brindley argues that a remand is required for two principal reasons: (1) the ALJ's assessment of Brindley's residual functional capacity, or RFC, is not supported by substantial evidence, and (2) the ALJ improperly relied upon the Grid at step five to find that Brindley was capable of performing other work in the national economy.  For the reasons set forth below, I conclude that the ALJ's use of the Grid was inappropriate, and that a remand is required.

At step five of the sequential process, "the burden shifts to the Secretary to show the existence of other jobs in the national economy that the claimant can perform" despite his impairments.  Guyton v. Apfel, 20 F. Supp. 2d 156, 162 (D. Mass. 1998) (quotations omitted).  Where the claimant has only

4

exertional limitations, the Commissioner can meet that burden by relying on the Grid, a "matrix of the applicant's exertional capacity, age, education, and work experience.  If the facts of the applicant's situation fit within the Grid's categories, the Grid directs a conclusion as to whether the individual is or is not disabled." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (quotations omitted).

In cases like this one, however, where a claimant suffers from both exertional and non-exertional limitations, the Commissioner typically cannot rely solely upon the Grid, and must instead use other means, usually a vocational expert, to meet her burden. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989).  Nonetheless, the ALJ may use the Grid

> where [the ALJ] concludes that these nonexertional impairments or limitations impose no significant restriction on the range of work a claimant is exertionally able to perform.  Moreover, if a non-strength impairment, even though considered significant, has the effect only of reducing that occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability.

Guyton, 20 F. Supp. 2d at 163 (quotations and citations omitted).  Thus, where the record "amply supports the conclusion that the claimant's nonexertional limitations do not interfere with a full range of work, reliance on the Grid is appropriate." Egan v. Astrue, 2012 DNH 025, 23 (internal punctuation omitted).

In making this determination, the ALJ must consider (1) whether the claimant can perform close to the full range of unskilled work, and (2) whether he can conform to the demands of a work setting, regardless of the skill level involved. Ortiz, 890 F.2d at 526; Lonardo v. Astrue, 2011 DNH 192, 16. "An inability to satisfy either inquiry precludes [exclusive] reliance on the Grid." Lonardo, 2011 DNH 192, 16.

Accordingly, in cases where a claimant suffers from both exertional and non-exertional impairments, the ALJ essentially has two acceptable options at step five.  He may, and typically should, call a vocational expert to testify.  Or, he may explain, based upon the inquiries set out in Ortiz, why relying upon the Grid is appropriate.  Here, the ALJ did neither.  Tr. at 32.  Instead, the ALJ merely stated, without explanation or citation to record evidence, that Brindley's non-exertional "limitations have little or no effect on the occupational base of unskilled light work."  Tr. at 32.

Noting this lack of detail, Brindley argues that the ALJ failed to provide an adequate basis for his reliance upon the Grid.  Doc. No. 11-1 at 15-17.  The Commissioner responds that the ALJ's conclusion, in assessing Brindley's RFC, that Brindley had only moderate non-exertional limitations, was sufficient to justify the ALJ's use of the Grid.  Doc. No. 12-1 at 12-15.  To

assess these arguments, I turn to the inquiries outlined in Ortiz.

### A. Ability to Perform Close to Full Range of Unskilled Work

According to Ortiz, an ALJ must first consider whether a claimant is able to perform close to the full range of unskilled work. Ortiz, 890 F.2d at 526. The Commissioner has described the mental demands of unskilled work to include "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Id.; see SSR 85-15, 1985 WL 56857. Here, record evidence raises doubts regarding Brindley's ability to meet those demands.

That evidence first includes Brindley's treatment records from the Manchester Mental Health Center. In February 2011, Brindley underwent an intake evaluation at the Manchester Mental Health Center, and was diagnosed with depressive disorder, alcohol and cocaine dependence, and personality disorder with antisocial traits. Tr. at 228. Brindley's Global Assessment Functioning ("GAF") score upon intake was 45.[1] Tr. at 228. When

---

[1] A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Doc. No. 13 at 3 n.3.

7

the Manchester Health Center closed Brindley's case in April 2011 (because he did not attend sessions following his intake evaluation) his GAF score was again reported as 45. Tr. at 227.

Brindley returned to Manchester Mental Health in July 2011, when his symptoms included physical and verbal aggression, agoraphobia, angry outbursts, anxiety, poor concentration, depressed mood, irritability, and isolation. Tr. at 272. Dr. Almos Nagy from the Manchester Mental Health Center continued to monitor, and adjust, Brindley's medication from July 2011 until March 2012, but again closed Brindley's case in May 2012. Tr. at 269, 354. Upon closing Brindley's case, Dr. Nagy noted that Brindley's goals to decrease his anger and depression were not met, and that Brindley's GAF score at discharge was 37.[2] Tr. at 269.

That evidence also includes consultative psychological examiner Juliana Read's July 2011 medical opinion. Dr. Read opined that Brindley (1) was capable of attending to his activities of daily living, but struggled to complete those tasks due to anxiety and depression, (2) could interact

---

[2] A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) [or] major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." Doc. No. 13 at 8 n.4.

appropriately and communicate effectively with others, (3) was able to understand and remember material, but struggled to do so at times due to depression and anxiety, (4) could maintain attention, but could not consistently hold concentration due to anxiety and mood, and (5) "presently [was] not capable of maintaining a schedule due to high anxiety and depression." Tr. at 249-50.

The record further contains state agency reviewing psychologist Laura Landerman's July 2011 opinion. According to Dr. Landerman, Brindley had no limitations with social interaction, and was not significantly limited in his ability to carry out very short and simple instructions, to sustain an ordinary routine without special supervision, to work in coordination or proximity to others without being distracted by them, or to make simple work-related decisions. Tr. at 74, 85. Dr. Landerman further stated, however, that Brindley was moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and to complete a normal workday and workweek without interruptions from psychologically based symptoms. Tr. at 74, 85.

Finally, the record contains treatment notes from Brindley's July 2012 sessions with therapist Sandra Volkman.

9

During those sessions, Brindley complained of anti-social tendencies, worried about his temper, described getting into fights outside of the homeless shelter where he was living, and feared he could "kill someone in a blackout state." Doc. No. 13 at 8-9 (citing Tr. at 262-65). Brindley's symptoms at that time included aggressive behavior, angry outbursts, anxiety, attention problems, depressed mood, memory problems, paranoid thoughts, and social impairment. Id. And, although Brindley's mental status examination was within normal limits, he was diagnosed with major depressive disorder. Id. at 9. Brindley continued to see Ms. Volkman on a bi-weekly basis through the date of his hearing before the ALJ. See Tr. at 44.

The evidence thus calls into question Brindley's ability to meet the mental demands – understanding and executing simple instructions; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting - of unskilled work. Yet, in deciding to rely upon the Grid, the ALJ did not mention, let alone analyze, this evidence. Tr. at 32. Instead, the ALJ merely stated that Brindley's non-exertional impairments "have little or no effect on the occupational basis of unskilled light work." Tr. at 32. That statement, without more, was insufficient. See Lonardo, 2011 DNH 192, 18.

Nonetheless, citing Falcon-Cartagena v. Commissioner of Social Security, 21 F. App'x 11 (1st Cir. 2001) and Hines v. Astrue, 2012 DNH 121, the Commissioner argues that the ALJ properly concluded that Brindley's mental impairments did not prevent him from performing close to the full range of unskilled work.  Doc. No. 12-1 at 14.  More specifically, the Commissioner asserts that, because the ALJ's RFC assessment indicated that Brindley was only moderately limited with respect to the demands of unskilled work, there was adequate support for the ALJ's finding that Brindley's mental impairments did not significantly affect his occupational base.  Id.; see Hines, 2012 DNH 121, 31 ("The First Circuit has recognized that moderate mental limitations impose no significant restriction on the range of work a claimant can perform.").  Under the facts of this case, however, where the ALJ's decision did not address several pieces of relevant evidence, I disagree.

An "ALJ's written decision need not directly address every piece of evidence in the administrative record" if that evidence is cumulative of materials that the ALJ does address, or does not support the claimant's position.  Lord v. Apfel, 114 F. Supp. 2d 3, 13 (D.N.H. 2000).  At the same time, though, "an ALJ may not simply ignore relevant evidence, especially when that evidence supports a claimant's cause."  Id. (collecting cases).  An ALJ therefore may not adopt one view of the evidence,

11

"without addressing the underlying conflict." Dube v. Astrue, 2011 DNH 031, 16. "Moreover, a court must be able to determine whether the ALJ considered the contrary evidence and chose to discredit it, or whether it was simply ignored." Id. (citation and punctuation omitted). Thus, "[f]or a reviewing court to be satisfied that an ALJ's decision was supported by substantial evidence, that decision must take into account whatever in the record fairly detracts from its weight." Lord, 114 F. Supp. 2d at 14 (quotations omitted).

In assessing Brindley's RFC, the ALJ gave great weight to Dr. Landerman's opinion, and gave partial weight to Dr. Read's opinion. Tr. at 31. The ALJ also made passing reference to Brindley's treatment at the Manchester Mental Health Center, noting that "[w]hile July 2011 treatment notes indicate a [GAF score] of 37, such assessment is out of proportion with objective medical findings and the claimant's demonstrated ability to achieve his activities of daily living." Tr. at 31. The ALJ did not address, however, Brindley's GAF scores of 45 in February and April 2011 – scores that indicate that Brindley suffered from "serious" impairments during that time. Tr. at 227, 228. Likewise, in calculating Brindley's RFC, the ALJ did not comment on the records from Brindley's July 2012 treatment with therapist Sandra Volkman. Those treatment notes, which Dr. Landerman did not consider during her July 2011 medical review,

12

indicate that Brindley continued to complain of aggressive behavior, angry outbursts, anxiety, and attention problems long after his treatment at the Manchester Mental Health Center ended.  See Doc. No. 13 at 8-9.

Because the ALJ did not confront evidence that cast doubt regarding Brindley's mental RFC, and in light of the ALJ's cursory treatment of Brindley's Manchester Mental Health Center records, the ALJ's decision does not "address[] the underlying conflict" regarding Brindley's non-exertional limitations. Dube, 2011 DNH 031, 16.  Based upon the limited analysis that the ALJ did provide, then, I am unable "to determine whether the ALJ considered the contrary evidence and chose to discredit it, or whether it was simply ignored." Id. (citation and punctuation omitted).  I therefore decline to apply the reasoning set out in Hines to the facts of this case.[3]

---

[3] Because the ALJ did not address relevant evidence, I need not consider Brindley's further argument that the ALJ erred in weighing the relevant medical opinions.  Doc. No. 11-1 at 8-10. I note, however, that an ALJ considers a number of factors when weighing a medical opinion, including the relationship between the claimant and the source of the opinion, and the opinion's supportability.  20 C.F.R. § 404.1527(c).  Accordingly, an ALJ generally will "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not . . . ."  Id. § 404.1527(c)(1).  Moreover, "because nonexamining sources have no examining or treating relationship with [the claimant], the weight [the ALJ] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions."  Id. § 404.1527(c)(3).  The ALJ should address these and other relevant factors in weighing opinion evidence on remand.

13

## B.     Ability to Cope with Demands of Any Work Environment

The second prong of the Ortiz inquiry requires the ALJ to consider whether a claimant can cope with the demands of any work environment. "Conforming to the demands of a work setting involves 'getting to work regularly . . . and remaining in the workplace for a full day.'" Hines, 2012 DNH 121, 31 (citing SSR 85-15). Here, the ALJ's decision contains no analysis on this point.

Nonetheless, again citing Hines, the Commissioner argues that the ALJ's RFC assessment provides an adequate basis to conclude that Brindley was only moderately limited with respect to the demands of any work environment. Doc. No. 12-1 at 14-15. I reject this argument for the same reasons provided above – namely, because the ALJ's residual functional assessment analysis did not account for relevant evidence. And, more fundamentally, I note that a reviewing court "cannot uphold the ALJ's decision based on rationales unarticulated in the record." Laplume v. Astrue, 2009 DNH 112, 17 n.20. Thus, the ALJ's refusal to provide any reasoned inquiry regarding Brindley's ability to cope with a work setting warrants remand. See Lonardo, 2011 DNH 192, 18.

In sum, I reverse the ALJ's decision because he did not adequately explain why, in light of Brindley's non-exertional impairments, reliance upon the Grid was appropriate.  The First Circuit has cautioned that "an ALJ typically should err on the side of taking vocational evidence when a [non-exertional] limitation is present in order to avoid needless agency rehearings." Ortiz, 890 F.2d at 528.  Here, the ALJ neither heeded the First Circuit's warning nor supplied a sufficient justification for his use of the Grid.  A remand is therefore required.

## IV.  CONCLUSION

For the foregoing reasons, Brindley's motion to reverse the decision of the Commissioner (Doc. No. 11) is granted. The Commissioner's motion to affirm (Doc. No. 12) is denied. Pursuant to the fourth sentence of 42 U.S.C. § 405(g), I remand the case to the Social Security Administration for further proceedings consistent with this decision.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

January 29, 2016

cc: Counsel of Record